Norman Trabulus
345 SEVENTH AVENUE
21ST FLOOR
NEW YORK, NEW YORK 10001
(212) 221-7811 telephone
(212) 398-8835 telefacsimile

Member, NY Bar                                                                email: ntrabulus@gmail.com

November 29, 2012

Hon. Nina Gershon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Drivas (Kornev)*, 10 CR 771-15(S-1) (NG)(RML)

Your Honor:

## **Preliminary Statement**

Defendant Vladimir Kornev, who is charged with only money laundering conspiracy, under Count Four of the superseding indictment, respectfully submits this letter in opposition to the government's motion *in limine* ("motion") to admit at trial evidence that he helped defendant Irina Shelikhova ("Shelikhova") "flee" the United States, knowing that she was then facing a health care fraud prosecution. Shelikhova eventually returned to the United States voluntarily to surrender.

## **Background**

By the same motion, the government seeks to introduce, as showing their consciousness of guilt, evidence that defendant Irina Shelikhova and her son, defendant Maksim Shelikhov ("Maksim"), "fled" the United States after a search warrant was executed at Shelikhova's medical office and several of Shelikhova's co-defendants were arrested and arraigned on a complaint that charged them and her (but not Maksim) with health care fraud.

That complaint did not name Kornev as a defendant, and no defendant was yet

Hon. Nina Gershon
November 29, 2012
Page 2

charged with money laundering (that happened about fourteen months later). The complaint did, however, allege that Shelikhova had written over $200,000 in checks to V & V Construction Solutions, Corp. ("V & V"), and that all had been cashed at the same check cashing facility. Complaint, M 10-800, at pp. 29-30. V & V was a construction business operated by Kornev and its owner, his common-law wife, Viktoria Vdovenko, and had done construction work for Shelikhova, her business, and others.

Throughout the ensuing months, Kornev was aware both of the ongoing health-care fraud prosecution and of the continuing investigation that ultimately led to the filing of money-laundering charges. His wife was extensively interviewed by FBI special agents concerning, among other things, V & V's affairs. Summaries of recordings made by a cooperating witness, recently disclosed by the government, reflect that the witness warned Kornev's wife that both the wife and Kornev were facing prosecution.

Throughout, Kornev and his wife stayed put. They did not move their residence, nor attempt to conceal their whereabouts. In November 2011, Kornev, with other newly added defendants, was arrested without incident on a superseding indictment that, for the first time, charged them, as well as Shelikhova and Maksim, with money laundering. Kornev has not been charged with health care fraud, either as a principal or aider and abettor. It has not been alleged that he participated in the operation of any of Shelikhova's health care businesses, their billing practices, their alleged performance of allegedly unnecessary medical services, or in any financial transactions with their patients, with Medicare, or insurers.

As set forth in its motion (p. 3), the government will seek to prove that Kornev engaged in money laundering by cashing checks Shelikhova and Maksim gave him that were payable to a supposed "shell company" Kornev controlled (apparently, V & V) and, then, supposedly returning the cash proceeds, which Shelikhova and Maksim then allegedly used to pay illegal kickbacks to patients for coming to the medical office to receive unnecessary services.

Hon. Nina Gershon
November 29, 2012
Page 3

# ARGUMENT

## What Kornev does, and does not, object to

The government asserts that "we expect Kornev to argue that he simply provided contractor services to Bay Medical and Shelikhova". The government states that, to demonstrate Kornev's relationship with Shelikhova went beyond that, "[c]ooperating witnesses will testify that Kornev drove Shelikhova to personal appointments, including to doctor's appointments... ." Motion, p. 24.

Kornev does not object to evidence that Shelikhova used him as a chauffeur, nor to evidence of social contacts between him and any of his co-defendants, including Shelikhova. That will suffice to establish the nature of his relationship with any co-defendants with whom he had a relationship, including Shelikhova, and to show that the relationship extended beyond "simply provid[ing] contractor services to Bay Medical and Shelikhova".

The Court should not assume that Kornev will contend that relationship was limited to " simply provid[ing] contractor services to Bay Medical and Shelikhova."  In any event, to demonstrate that it was not, the government would not need to show, specifically, that Kornev accompanied or drove Shelikhova to the airport or to immediately preceding meetings. As will be shown, such evidence would unfairly prejudice him, while having insufficient probative value on the issue of his culpability to justify its admission. Kornev therefore objects to its admission, either in the government's case in chief, in cross-examining Kornev should he testify, or in rebuttal.

## There is a factual issue whether the government's evidence would even show that Kornev knew he was helping Shelikhova "flee".

Preliminarily, there is a factual issue whether the circumstances of Shelikhova's departure would even support an inference that Kornev knew she was "fleeing" prosecution.

I am informed that, at the same time that Shelikhova purchased her ticket to leave

Hon. Nina Gershon
November 29, 2012
Page 4

the United States, she also purchased a return ticket; further, that the "short leisure trip" Maksim already had plans to take involved his attending his engagement celebrations abroad; further, that Shelikhova maintained at the time that the purpose of her trip was to attend those celebrations and meet Maksim's prospective in-laws, and return.

In hindsight it appears either that Shelikhova intended to flee or, once abroad, thought the better of returning. It does not follow, however, that Kornev knew at the time that she would not return.

The motion conclusorily asserts that Kornev was present for discussions that Shelikhova would "flee." It does not further specify what it intends to show that Kornev knew concerning her stated plans and purpose for the trip. The government has provided no discovery whatsoever on this – no copies of Shelikhova's ticket, or return ticket, or booking information. Nor has it disclosed whether any of its cooperating witnesses – one of whom is believed to have accompanied Shelikhova to the airport – confirm that Shelikhova purchased a return ticket and professed a purpose to attend engagement celebrations with Maksim and meet his new in-laws. While the government acknowledges that she apparently deceived her own lawyer into telling the government that she would surrender on the following Monday, it is silent on details that are believed to support that Kornev too was deceived when he assisted her in departing.

So long as the government proposes to admit evidence of that assistance, these things are *Brady* material. The government should be required to disclose them now, so that the Court may consider them in deciding the motion.

**Irrespective of the factual issue, evidence that Kornev assisted Shelikhova in departing would have insufficient probative value to support its admission.**

The government says that it wishes to "complete the story" and to show a relationship of trust between Kornev and Shelikhova. It does not, however, explain how Kornev's remaining behind, while assisting Shelikhova in departing, would complete the story of an alleged money laundering they supposedly performed *together*. Nor does it explain how helping get her to the airport, when

Hon. Nina Gershon
November 29, 2012
Page 5

any taxi driver could have done the same, evidences a level of trust associated with criminal co-conspirators.

Before the government may offer evidence of a defendant's *own* flight as evidence of his guilt, it must ensure that the each link in the chain of inferences leading to a conclusion of guilt is "sturdily supported":

> Flight is an admission by conduct. *United States v. Lobo,* 516 F.2d 883, 885 n. 1 (2d Cir.1975) (per curiam) (Flight "is to be viewed as conduct offered as circumstantial evidence rather than for its assertive, testimonial value"). "Its probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Myers,* 550 F.2d 1036, 1049 (5th Cir.1977); *United States v. Beahm,* 664 F.2d 414, 420 (4th Cir.1981) ("If the government wishes to offer evidence of flight to demonstrate guilt, it must ensure that each link in the chain of inferences leading to that conclusion is sturdily supported.") (citing *Myers,* 550 F.2d at 1049); *see also* 1 NEW WIGMORE EVID. § 1.3 (Leonard Rev.2000).

*United States v. Al-Sadawi,* 432 F.3d 419, 424 (2d Cir. 2005).

Where, as here, a defendant does not flee, but allegedly aids someone else to flee, there are additional links in the chain of inferences; the support for each of them too must be no less sturdy. *See Al-Sadawi*, *supra* (error to admit evidence of defendant's wife's actions to arrange their mutual flight as evidence of his supposed consciousness of his own guilt where the defendant never fled).

The motion's argument that Kornev's actions, in assisting Shelikhova to depart, evidence consciousness of his own supposed guilt, is attenuated and strained. The government asserts (motion p. 25):

Hon. Nina Gershon
November 29, 2012
Page 6

> Kornev, as a coconspirator who had not yet been charged with any crime, had a vested interest in assisting Shelikhova to flee the country as her arrest might lead to evidence of his money laundering activities being discovered.

The motion fails to flesh that out with any supporting evidence. Nowhere does it assert that Kornev acknowledged, either at the time, or in his post-arrest statements, having a supposed "vested" interest in Shelikhova "fleeing". Nor does it assert that any of the government's cooperating witnesses will say that he did, or that anyone asked or persuaded him to help Shelikhova leave on the basis that it was in his interest that she flee lest she be arrested and her arrest hurt him. The chain of inferences which the government would draw from the proffered evidence is not "sturdily supported." Accordingly, the evidence should be excluded.

**Admitting the evidence would unfairly prejudice Kornev.**

The government's case against Kornev depends on proving that Shelikhova is guilty of health care fraud. Absent that, the government will have failed to prove an essential element – that the moneys Kornev allegedly conspired to launder were proceeds of health care fraud – the theory of the superseding indictment (¶ 28).

More than that, the government would also have to prove that Kornev knew at the time that the funds involved were proceeds of some unlawful activity.
That knowledge would have to be contemporaneous with his alleged laundering actions. After-acquired knowledge would not suffice.

When a defendant evinces consciousness of his *own* guilt, that consciousness necessarily derives from his own contemporaneous knowledge of his crime. Where, however, a defendant manifests a belief in someone *else's* guilt, that does not follow. Such a belief may be based on after-acquired information, particularly where, as here, the government does not contend that Kornev participated in or abetted the underlying health care fraud.

A jury that had been instructed on flight would, upon hearing that Shelikhova fled, likely conclude that evidenced consciousness of her own guilt. If it also heard that

Hon. Nina Gershon
November 29, 2012
Page 7

Kornev assisted her, and if the government is correct in what inferences flow from its proffered evidence, the jury would likely also conclude that Kornev believed Shelikhova to be guilty.  From that, the jury could, and likely would, infer that he believed she had committed health care fraud.  And from that, it would infer that he knew that any moneys she had given him or V & V were proceeds of unlawful activity.

That would satisfy an element of the government's case, but it would do so unfairly, prejudicially, and, with a reasonable probability, wrongly.  The belief in Shelikhova's guilt that the jury would impute to Kornev may well have derived from after-acquired information that the government does not dispute he received – from the execution of the search warrant, the arrest of Shelikhova's business associates, and the complaint that convincingly detailed a health care fraud case against her based on recordings, informants, and a concealed video camera.  An inference that Kornev had the requisite *contemporaneous* knowledge would not be "sturdily supported".

The evidence of Kornev's assistance to Shelikhova would be subsequent act evidence.  Such evidence is admissible under Rule 404(b) *only* when it so closely parallels the charged conduct that it is "probative regardless of the temporal difference":

> Subsequent acts are admissible under Rule 404( b) *see United States v. Germosen,* 139 F.3d 120, 128 (2d Cir.1998), but the temporal difference between the charged conduct and the subsequent acts may impact whether the evidence is probative, *see United States v. Rutkoske,* 506 F.3d 170, 177 & n. 3 (2d Cir.2007). This Circuit has upheld the admission of subsequent act evidence to prove a state of mind only when it so closely paralleled the charged conduct that it was probative regardless of the temporal difference. [citations omitted]

*United States v. Curley*, 639 F.3d 50, 61 (2d Cir. 2011)(new trial ordered due to improper admission of 404(b) evidence, including subsequent conduct that was insufficiently probative).

Hon. Nina Gershon
November 29, 2012
Page 8

The proffered subsequent act evidence is not "probative regardless of the temporal difference." That difference results in a serious risk that the jury would wrongfully convict Kornev based on after-acquired information rather than contemporaneous knowledge.

For all the foregoing reasons the government's motion *in limine* as to Kornev should be denied.

Respectfully submitted,

/S/

Norman Trabulus